872 A.2d 814 (2005)
377 N.J. Super. 286
Anthony OLIVO, Plaintiff-Appellant,
v.
EXXON MOBIL CORPORATION, Defendant-Respondent, and
Owens-Illinois, Inc.; Owens-Corning Corp.; GAF Corp.; Garlock, Inc.; Fibreboard Corp.; Armstrong World Industries, Inc.; Turner-Newall, Ltd.; Monsanto; United States Gypsum Co.; Asbestos Claims Management Corp. *815 (f/k/a National Gypsum Co.); Foster Wheeler Corp.; Flintkote Co.; Flexitallic, Inc.; A.P. Green Industries, Inc.; Brand Insulation Co.; AC and S, Inc.; Melrath Gasket, Inc.; Jam Industries, Inc.; Durametallic, Inc.; W.R. Grace Co.; Rapid American Corp.; Crown, Cork, & Seal, itself and as successor to Mundet Cork; Raytheon Engineers (formerly United Engineers); U.S. Mineral Products Co.; U.S. Rubber Co.; E.I. DuPont deNemours and Co., Inc.; Texaco, Inc.; B.F. Goodrich; and Shell Chemical Corp., Defendants.
Superior Court of New Jersey, Appellate Division.
Argued April 13, 2005.
Decided May 5, 2005.
*816 Joshua M. Spielberg, Cherry Hill, argued the cause for appellant (Shivers, Spielberg, Gosnay & Greatrex, attorneys; Mr. Spielberg, on the brief).
James C. Orr, Newark, argued the cause for respondent (Wilson, Elser, Moskowitz, Edelman & Dicker, attorneys; Mr. Orr and Carolyn F. O'Connor, of counsel, and Amy Renee Bales, on the brief).
Before Judges CONLEY, BRAITHWAITE and LISA.
The opinion of the court was delivered by
BRAITHWAITE, J.A.D.
This appeal is from a summary judgment dismissing a survival and wrongful death action filed by plaintiff Anthony Olivo on his own behalf and on behalf of his deceased wife, Eleanor Olivo ("decedent"), against thirty-two named defendants that manufactured, supplied or installed asbestos products, or owned premises where asbestos products were used. Plaintiff labored as a welder/steamfitter at various locations from 1947 to 1984. In 2000, decedent was diagnosed with mesothelioma from inhaling asbestos while laundering plaintiff's work clothes. She died in 2001.
During the course of litigation, all other defendants settled with plaintiffs, except defendant Exxon Mobil Corporation ("Exxon Mobil"), the landowner of one of the worksites in issue. The motion judge granted defendant's motion for summary judgment, finding that defendant had no duty to decedent. We reverse.
Because this appeal arises on summary judgment, we must view the facts and the inferences therefrom in the light most favorable to plaintiff. Strawn v. Canuso, 140 N.J. 43, 48, 657 A.2d 420, 422 (1995). *817 From 1947 until his retirement in 1984, plaintiff labored as a welder/steamfitter with Union Local 322. He married decedent in 1943. During the course of his working life, plaintiff was employed by over fifty third-party contractors, working at numerous sites throughout South Jersey, including the Exxon Mobil oil refinery in Paulsboro. Plaintiff worked in the Exxon Mobil refinery between 1951 and 1983, spending an estimated total of three years and seven months at the site. In accordance with his duties as a welder/steamfitter, plaintiff worked with and around asbestos products on a daily basis, including pipe coverings and "mud."
When plaintiff returned home at the end of each day, he would go directly to the basement of the couple's home, where the washing machine was kept, and change out of his asbestos covered work clothes. Decedent would later place his "very dirty . . . [and] greasy" work clothes in the washing machine; she laundered her husband's work clothes on a daily basis.
In 1989, plaintiff was diagnosed with a non-malignant asbestos-related disease. Decedent was diagnosed with malignant mesothelioma, an asbestos-related pleural disease, in March 2000. She died of the disease fourteen months later at the age of eighty-two. Plaintiff was never warned of the hazards of asbestos dust until his diagnosis. Further, plaintiff received no safety instructions regarding asbestos. Exxon Mobil did not provide showers, uniforms, or changing rooms. Moreover, as early as 1916, it was generally known that to prevent contaminating employees' homes with toxic substances, certain safety precautions should be established at worksites, such as changing rooms and washing facilities.
A report, prepared by plaintiff's expert Frank M. Parker, III, states that "the petrochemical industry kept reasonably abreast of the state of knowledge concerning asbestos. It is also apparent that they did not implement standard industrial hygiene practices consistent with that state of knowledge." In interrogatories, Exxon Mobil conceded that "by 1937, [it]. . . was aware that exposure to asbestos dust or raw asbestos, if of sufficient duration and intensity, was associated with asbestosis," as detailed in the 1936 Bonsib Report by Standard Oil of New Jersey. Moreover, in 1954, Arthur Pabst, an industrial hygienist working for Mobil, wrote an article identifying asbestos as a toxic material commonly found in refineries, which required monitoring.
Plaintiff filed this suit and subsequently Exxon Mobil moved for summary judgment. The judge granted the motion. He said, in part, that "imposing an additional duty on a landowner for asbestos-related injuries that occurred off the premises would not be fair or just."
On appeal, plaintiff contends that: (1) because manufacturers owe a duty to both workers and members of the workers' households under products liability, premises owners should owe a duty to both workers and members of the workers' households under premises liability; (2) Exxon Mobil owed a duty to decedent because it was foreseeable that she would be harmed; and (3) Exxon Mobil owed a duty to decedent because it was in the best position to prevent the harm. We agree with plaintiff.
In a negligence case, plaintiff must show a duty of care, a breach of that duty, and that the breach proximately caused the harm. Ivins v. Town Tavern, 335 N.J.Super. 188, 194, 762 A.2d 232, 235 (App.Div.2000). "In reviewing the grant of summary judgment to the defendant, . . . the scope of the duty owed by the defendant [is] a legal question for the court to decide, based on the totality of the *818 circumstances." Zepf v. Hilton Hotel & Casino, 346 N.J.Super. 6, 18, 786 A.2d 154, 161 (App.Div.2001).
Under traditional common law premises liability, a landowner's duty of care is dependant upon the visitor's status as a trespasser, licensee/social guest, or business invitee. Sussman v. Mermer, 373 N.J.Super. 501, 504, 862 A.2d 572, 574 (App.Div.2004) (citing Parks v. Rogers, 176 N.J. 491, 497, 825 A.2d 1128, 1131 (2003)). In New Jersey, however, the common law of premises liability "has undergone transition toward `a broadening application of a general tort obligation to exercise reasonable care against foreseeable harm to others.'" Sussman, supra, 373 N.J.Super. at 504, 862 A.2d at 574 (quoting Hopkins v. Fox Lazo Realtors, 132 N.J. 426, 435, 625 A.2d 1110, 1114 (1993)). The court must consider all of the circumstances and determine whether it is fair and just to impose a duty of care on a landowner. Sussman, supra, 373 N.J.Super. at 504, 862 A.2d at 574 (citing Brett v. Great Am. Recreation, Inc., 144 N.J. 479, 509, 677 A.2d 705, 720 (1996)). This is the standard, regardless of whether the injury occurs on or off the landowner's premises. Kuzmicz v. Ivy Hill Park Apartments, Inc. 147 N.J. 510, 515, 688 A.2d 1018, 1020 (1997).
In assessing whether imposition of such a duty would be fair and just, courts weigh and balance the following four factors: (1) the relationship of the parties, (2) the nature of the attendant risk, (3) the opportunity and ability to exercise care, and (4) the public interest in the proposed solution.
[Sussman, supra, 373 N.J.Super. at 504, 862 A.2d at 574 (citing Hopkins, supra, 132 N.J. at 439, 625 A.2d at 1116.)]
Our courts have not addressed whether under premises liability landowners have a duty to a spouse of an asbestos worker. However, a recent decision from the New York Supreme Court, Appellate Division, with facts similar to those here, is instructive. In New York, a husband and wife filed a negligence action against the husband's employer, the Port Authority of New York and New Jersey, for the wife's injuries caused by exposure to asbestos while laundering his work clothes. In re New York City Asbestos Litigation, 14 A.D.3d 112, 113-14, 786 N.Y.S.2d 26 (2004), leave to appeal granted ___ A.D.3d ___, ___ N.Y.S.2d ___ (N.Y.App.Div.2005).[1] First, the court looked to other decisions in New York, finding that landowner-employers owe a duty of care to off premises plaintiffs. Id. at 117-18, 786 N.Y.S.2d 26 (citing Kowalski v. Goodyear Tire & Rubber Co., 841 F.Supp. 104 (W.D.N.Y.1994) (finding that Goodyear owed a duty of care under negligence and strict liability theories to employee's wife suffering from bladder cancer caused by exposure to toxic chemical brought home on husband's work clothes)). Then the court looked to decisions in other jurisdictions that held manufacturers and suppliers of asbestos products liable to injured third parties. Id. at 118-19, 786 N.Y.S.2d 26. Finally, in concluding that the defendant had a duty to the employee's wife, the court stated:
Although the Port Authority was not a manufacturer or supplier of asbestos products, but rather permitted their use at its work sites, the core of the analysis is the same in determining the scope of the duty owed to third partiesdid the defendants know or have reason to know that their use or sale of a product *819 posed a reasonably foreseeable risk of harm to the injured plaintiffs.
[Id. at 119, 786 N.Y.S.2d 26 (citations omitted).]
We agree with the New York Appellate Division, but note that this analysis is sound under principles of New Jersey law notwithstanding the New York decision.
In New Jersey, manufacturers of hazardous products owe a duty of care to both users or consumers and third parties. We held that the trailer manufacturer of a tractor trailer, which was not equipped with a back-up alarm, was liable to a bystander who was killed when run over by the trailer. Tirrell v. Navistar Int'l, Inc., 248 N.J.Super. 390, 394-95, 402-03, 591 A.2d 643, 645, 649-50 (App.Div.) (citing Monsanto Co. v. Alden Leeds, Inc., 130 N.J.Super. 245, 263, 326 A.2d 90, 99-100 (Law Div.1974); Lamendola v. Mizell, 115 N.J.Super. 514, 524, 280 A.2d 241, 246 (Law Div.1971)), certif. denied, 126 N.J. 390, 599 A.2d 166 (1991).
In Monsanto, supra, the Law Division applied the "`foreseeable plaintiff'" test, and held that the landlord of a tenant who purchased dry organic chloride was permitted to recover from the manufacturer when the building was destroyed in a fire ignited by the product. 130 N.J.Super. at 264, 326 A.2d at 100. Additionally, in Lamendola, supra, the Law Division permitted a driver struck by a car with a faulty accelerator pedal to recover from the manufacturer. 115 N.J.Super. at 518, 280 A.2d at 246. The court said: "[it] is, therefore, well within the realm of foreseeability that a pedestrian or other traveller lawfully upon the road will be insured due to a defect in a vehicle." Id. at 524, 280 A.2d at 246.
Foreseeability is a foundational element in determining whether a duty exists. J.S. v. R.T.H., 155 N.J. 330, 337, 714 A.2d at 928 (1998) (citing Williamson v. Waldman, 150 N.J. 232, 239, 696 A.2d 14, 17 (1997)).
In determining whether a duty is to be imposed, courts must engage in a rather complex analysis that weighs and balances several, related factors, including the nature of the underlying risk of harm, that is, its foreseeability and severity, the opportunity and ability to exercise care to prevent the harm, the comparative interests of, and the relationships between or among, the parties and, ultimately, based on considerations of public policy and fairness, the societal interest in the proposed solution.
[J.S., supra, 155 N.J. at 337, 714 A.2d at 928 (citing Hopkins, supra, 132 N.J. at 439, 625 A.2d at 1116).]
Exxon Mobil concedes, and we agree, that it owed a duty to warn of the risks associated with exposure to asbestos and provide reasonable safeguards against its dangers of care to plaintiff, its employee.
Foreseeability as it impacts duty determinations refers to "the knowledge of the risk of injury to be apprehended. The risk reasonably to be perceived defines the duty to be obeyed; it is the risk reasonably within the range of apprehension, of injury to another person, that is taken into account in determining the existence of the duty to exercise care."
[Clohesy v. Food Circus Supermarkets, Inc., 149 N.J. 496, 503, 694 A.2d 1017, 1021 (quoting Hill v. Yaskin, 75 N.J. 139, 144, 380 A.2d 1107, 1109 (1977)).]
Here, the record adequately supports Exxon Mobil's knowledge of the risk of injury to someone like plaintiff's decedent. Defendant knew that exposure to asbestos created a threat of injury as early at 1937. Moreover, it was generally known as early as 1916, that to avoid contaminating employees' homes, employees laboring around *820 industrial chemicals should be provided with changing rooms, washing facilities, and encouraged not to wear work clothing home.
"`Once the foreseeability of an injured party is established,. . . considerations of fairness and policy govern whether the imposition of a duty is warranted.'" Carvalho v. Toll Bros. and Developers, 143 N.J. 565, 573, 675 A.2d 209, 212 (1996) (quoting Carter Lincoln-Mercury, Inc. v. EMAR Group, Inc., 135 N.J. 182, 194-95, 638 A.2d 1288, 1294 (1994)). This requires a weighing and balancing of "`the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and the public interest in the proposed solution.'" Carvalho, supra, 143 N.J. at 573, 675 A.2d at 212 (quoting Hopkins, supra, 132 N.J. at 439, 625 A.2d at 1116). When we weigh and balance these factors, we believe Exxon Mobil owed a duty to plaintiff's decedent.
The opportunity and ability to exercise care is key to assessing whether imposition of a duty is fair and just. Hopkins, supra, 132 N.J. at 439, 625 A.2d at 1116. Exxon Mobil was in the best position to prevent the harm. Asbestos-related diseases are very serious and often deadly. Exxon Mobil could have easily informed plaintiff of the risks to his own health and the health of his wife and/or provided changing rooms so as to limit exposure to asbestos. As early as 1916, Exxon Mobil knew about the potential for contaminating a worker's home with industrial chemicals and the steps to be instituted to cut down on this risk. "When the defendant's actions are `relatively easily corrected' and the harm sought to be prevented is `serious,' it is fair to impose a duty." J.S., supra, 155 N.J. at 339-40, 714 A.2d at 929 (quoting Kelly v. Gwinnell, 96 N.J. 538, 549-50, 476 A.2d 1219, 1225 (1984)).
Exxon Mobil's claim that it owed no duty to decedent because she was not on its premises when she came in contact with the asbestos is not dispositive of the duty question. Landowners can owe a duty to plaintiffs injured off the landowner's premises. Kuzmicz, supra, 147 N.J. at 515, 688 A.2d at 1020. The ultimate question is whether it is fair and just to impose a duty of care on a landowner. Hopkins, supra, 132 N.J. at 435, 625 A.2d at 1114.
Finally, we must consider the public interest in the solution. Hopkins, supra, 132 N.J. at 439, 625 A.2d at 1116. We recognize Exxon Mobil's concern that imposing a duty here potentially exposes it to liability with respect to others who might come in contact with plaintiff. However, we limit our holding to the facts of this case. Plaintiff's decedent predictably came into contact with plaintiff's work clothes. In re New York City Asbestos Litigation, supra, 14 A.D.3d at 121, 786 N.Y.S.2d 26. As such, she falls "within the range of apprehension" that is required to impose a duty of care. Hill v. Yaskin, supra, 75 N.J. at 144, 380 A.2d at 1109. "[I]t is hardly a quantum leap to extend the duty of care owed to employees [to their spouses] who predictably come into routine contact with the employees clothing." In re New York City Asbestos Litigation, supra, 14 A.D.3d at 121, 786 N.Y.S.2d 26.
However, we agree with the following:
On the other hand, extending the duty to others who might foreseeably come into contact with the employee's clothing but whose contact with the employee is unpredictable and generally outside the scope of an employer's knowledge, such as car pool participants, bus drivers, elevator operators, etc., would stretch the *821 concept of duty beyond any reasonable parameters.
[Id. at 121-22, 786 N.Y.S.2d 26.]
Therefore, we limit the duty to plaintiff's decedent. We decline to address other potential plaintiffs that are not before us. We recognize that this is line drawing, but our courts have drawn lines in the past. For example, for a bystander to recover for infliction of emotional distress there must be a "marital or intimate, familial relationship." Portee v. Jaffee, 84 N.J. 88, 101, 417 A.2d 521, 528 (1980) (footnote omitted). "A critical element in this spectrum of cases is the intimate family relationship. . . . It is this relationship that serves as the factual and legal basis for determining whether a duty of reasonable care is owed to the claimant[,] . . . and the fairness in imposing such a duty. . . ." Giardina v. Bennett, 111 N.J. 412, 419, 545 A.2d 139, 142 (1988). We go no further than we need to here.
We reverse the summary judgment and remand for further proceedings.
NOTES
[1] We are aware of CSX Transp., Inc. v. Williams, 278 Ga. 888, 608 S.E.2d 208 (2005), which reached a decision contrary to that in In re New York City Asbestos Litigation, supra. We are not persuaded by the holding of the Georgia Supreme Court.