814 A.2d 1066

PAUL J. TIGHE AND RENEE TIGHE, H/W, PLAINTIFFS–APPEL-LANTS, v. DEBORAH A. PETERSON AND THEODORE PETER-SON, H/W, DEFENDANTS–RESPONDENTS, AND ABC CORPO-RATION 1–10, ABC PARTNERSHIP 1–10, JOHN DOE 1–10 AND JANE DOE 1–10, J/S/A, DEFENDANTS.

Argued October 21, 2002—Decided December 23, 2002.

*Louis Capelli, Jr.,* argued the cause for appellants.

*William L. Lundgren, III,* argued the cause for respondents (*Green, Lundgren & Ryan,* attorneys).

PER CURIAM.

We affirm for the reasons expressed in the thorough and persuasive opinion of the Appellate Division majority authored by Judge King. We add only the following to underscore our agreement with that decision.

A host's duty to a social guest includes an obligation to warn of a known dangerous condition on the premises except when the guest is aware of the condition or by reasonable use of the facilities would observe it. *Tighe v. Peterson,* 356 *N.J.Super.* 322, 325, 812 *A.*2d 423 (App.Div.2002) (citing New Jersey case law applying test set forth in *Restatement (Second) of Torts*). Courts employ a fact-sensitive analysis when determining whether a host has fulfilled his or her duty to warn a particular guest. In this case, we are satisfied that defendants did not have to warn their brother-in-law plaintiff of the configuration of their pool's depth— that is, where the shallow part of the pool was situated and where the shallow end began its slope downward toward the deepest portion of this in-ground pool. Plaintiff had been in the pool approximately twenty times before and testified that he was well aware of where the shallow and deep portions were situated. He also stated that he knew not to dive into the shallow part of the pool.

These hosts did not breach any duty to warn plaintiff about the depth locations when they allowed him to use the pool on what he

said may have been his twenty-first occasion to swim there. *Id.* at 324, 812 *A.*2d 423. Plaintiff made an unfortunate error on that occasion, injuring himself on the sloped bottom close to the shallow end of the pool. It defies notions of reasonableness to regard plaintiff as being unaware of the slope of the pool bottom, or to conclude he could not reasonably have detected it from his use of the pool that day and on the many occasions before. Nor was there any evidence that defendants encouraged a dangerous use of this pool. Rather, we are confronted here with a plaintiff who acknowledged that at the moment of the injury it was he who was "horsing around." Unfortunately, the accident happened. However, we agree with the majority below that, on these facts, there was no legal duty to warn owed by defendants to plaintiff.

The grant of summary judgment by the courts below is affirmed.

LONG J., dissenting.

Plaintiff Paul Tighe was severely injured when he dove into defendants' pool after apparently misjudging the point at which the pool water was deep enough for diving. Although the pool had no depth or other safety markings, the trial court granted summary judgment in favor of defendants, apparently because plaintiff had used the pool on a number of prior occasions and was generally familiar with it. Over a dissenting opinion by Judge Wecker, the Appellate Division affirmed, essentially on the ground that plaintiff's familiarity with the pool obviated any further duty that defendants otherwise might have had toward him.

That ruling dices the notion of duty too finely. Under our law, the existence of a duty of care in a particular case is a fact-sensitive inquiry that turns on whether its imposition "satisfies an abiding sense of basic fairness under all of the circumstances in light of considerations of public policy." *Goldberg v. Housing Auth.*, 38 *N.J.* 578, 583, 186 *A.*2d 291 (1962).

That inquiry involves identifying, weighing, and balancing several factors—the relationship of the parties, the nature of the attendant risk, the opportunity and

ability to exercise care, and the public interest in the proposed solution. The analysis is both very fact-specific and principled; it must lead to solutions that properly and fairly resolve the specific case and generate intelligible and sensible rules to govern future conduct.

[*Hopkins v. Fox & Lazo Realtors,* 132 *N.J.* 426, 434, 625 *A.2d* 1110 (1993) (citation omitted).]

Where the potential harm resulting from a risk is great and the means of avoiding it small, "it is fair to impose a duty." *J.S. v. R.T.H.,* 155 *N.J.* 330, 339, 714 *A.2d* 924 (1998); *see also Kelly v. Gwinnell,* 96 *N.J.* 538, 549–50, 476 *A.2d* 1219 (1984) (holding defendant liable for injuries stemming from drunk driving accident where defendant had provided driver with alcohol because potential harm was "serious" and defendant's actions were "relatively easily corrected"). That is the case here.

As Judge Wecker observed, because the risk of serious harm from diving into shallow water is so great and the concomitant avoidance practice (painting depth marks or "no diving" signs) requires so little effort, notions of basic fairness impose a duty on pool owners to take such protective measures. To be sure, plaintiff's own conduct may ultimately bar or severely limit his recovery. But that is an issue for the jury and not for the trial court, the Appellate Division, or for us.

I would therefore reverse and remand this case for trial substantially for the reasons expressed in the thorough and thoughtful dissenting opinion of Judge Wecker.

*For affirmance*—Chief Justice PORITZ and Justices COLEMAN, VERNIERO, and LaVECCHIA—4.

*For reversal and remandment*—Justice LONG, and Justices ZAZZALI and ALBIN—3.