**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2420-24

ARSENIO BAPTISTA,

    Plaintiff-Appellant,

v.

BOLLA EM REALTY LLC,
RAZWAN AHMED, and BOLLA
MANAGEMENT CORP.,

    Defendants-Respondents,

and

MOH INC., MOBIL-BOLLA OF
1440 ROUTE 23, and PACKA-NACK
MOBIL,

    Defendants.

_____

Argued April 22, 2026 – Decided May 11, 2026

Before Judges Mayer, Paganelli and Jacobs.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Docket No. L-2233-23.

Gregory F. Kronberg argued the cause for appellant (Martin F. Kronberg PC, attorneys; Gregory F. Kronberg, on the brief).

Pasquale A. Pontoriero argued the cause for respondents (Kennedys CMK LLP, attorneys; Pasquale A. Pontoriero, of counsel and on the brief; Ryan J. Schimmel, on the brief).

PER CURIAM

Plaintiff Arsenio Baptista appeals from an April 10, 2025 order granting summary judgment to defendants Bolla EM Realty LLC, Razwan Ahmed, and Bolla Management Corp.[1]  We affirm.

We glean the undisputed facts from the motion record.  On the morning of January 5, 2022, a winter storm, including rain, sleet, and freezing rain occurred in Wayne Township, New Jersey where defendants' business was located.  The business had gas pumps, exposed to the weather, other than an overhead canopy, and a nearby minimart.  "The minimart had its own parking spaces in front of it and was not located under the canopy."

Baptista described the weather "like a mist.  It was like rain, rain and you would hear the ice particles like on the windshield . . . ."  He parked his truck

---

[1]  The original order was entered on February 28, 2025, and amended on April 10, 2025, to add defendant Bolla Management Corp.  The complaint as to MOH Inc. and Packanack Mobil was dismissed for lack of prosecution.

near a gas pump. In his deposition, Baptista testified he gave the gas attendant his credit card and told him to fill up the gas tank. Baptista "decided to get coffee from the nearby minimart." He testified "there was still an ice storm" when he parked and exited his truck.

After he exited the truck, Baptista "took two steps going towards the front of the" truck and "violently fell on the floor." While he was on the ground, Baptista observed a "sheet of ice across the whole premises." He described it as "black ice" which he "thought . . . was just dampness." He testified "[t]he gas station attendant never told [him] to be careful with [his] step, no advisory, nothing" and there was "[n]o de-icer, no advisory, nothing on the premises."

Baptista filed a complaint against defendants, alleging collectively they "owned, occupied, operated, maintained and/or controlled" the premises; "did so negligently and carelessly"; and as a result of a "dangerous condition" on the premises, he sustained serious and permanent injuries. Following discovery, defendants moved for summary judgment.

On February 28, 2025, after hearing the parties' arguments, the judge placed his decision on the record. The judge found the facts were not disputed. The judge found Baptista "pulled up to get gas from . . . defendant[]s['] gas station [and] he got out of his vehicle." Further, the judge found the storm was not over

3

because Baptista stated he saw and felt mist. Therefore, the judge concluded the ongoing storm rule controlled, citing Pareja v. Princeton International Properties, 246 N.J. 546 (2021). The judge concluded the exceptions to the ongoing storm rule in Pareja were inapplicable to the facts of this matter. Further, the judge found there was no "carve-out" from the ongoing storm rule because the gas station had a canopy.

The judge considered Baptista's claim that defendants' purported violation of OSHA[2] standards could impose liability. However, the judge concluded Baptista could not rely on OSHA standards because he was not an "employee" of defendants' business and thus not part of the class of people intended to benefit from the OSHA standards, relying on Alloway v. Bradlees, Inc., 157 N.J. 221 (1999). The judge granted defendants summary judgment.

On appeal, Baptista argues the judge erred in granting summary judgment. He contends imposing a duty on defendants to warn or post a sign regarding a dangerous condition under the canopy was fair under Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 439 (1993). Moreover, Baptista claimed requiring defendants to provide a warning or post a sign was not impractical and imposed only a minimal burden, and therefore Pareja is distinguishable.

---

[2] Occupational Safety and Health Act (OSHA), 29 U.S.C. §§ 651 to -678.

A-2420-24

In addition, Baptista argues this matter falls within Pareja's exceptions to the ongoing storm rule. He contends "defendants exacerbated and increased the risk of icy conditions by creating the impression that the area beneath the canopy was safe and free of ice." In addition, he claims because "the gas station's convenience store was open," defendants signaled "the premises was safe to traverse."

Baptista further attempts to distinguish Pareja by arguing the canopy area was a covered work area, regulated by OSHA, and "fundamentally different from a public sidewalk or walkway." Therefore, Baptista asserts, despite not being defendants' employee, OSHA regulations and the "National Safety Council's Accident Prevention Manual for Businesses and Industry"—as relied upon by his expert—"are pertinent in determining the nature and extent of the duty of care owed to him." (Italicization omitted). Baptista argues "[t]he failure to remove hazardous ice or snow in this area is a violation of OSHA safety regulations and National Safety Council standards designed to prevent injury to employees and visitors."

Appellate courts review an order granting "summary judgment de novo, applying the same standard used by the trial court." Samolyk v. Berthe, 251 N.J. 73, 78 (2022). A court must grant summary judgment when "reviewing 'the

5

competent evidential materials submitted by the parties,'" viewed in the light most favorable to the non-moving party, "'there are no genuine issues of material fact . . . the moving party is entitled to summary judgment as a matter of law.'" Grande v. St. Clare's Health Sys., 230 N.J. 1, 24 (2017) (quoting Bhagat v. Bhagat, 217 N.J. 22, 38 (2014)); R. 4:46-2(c).

In determining whether a genuine issue of material fact exists, we "must 'draw[] all legitimate inferences from the facts in favor of the non-moving party.'" Friedman v. Martinez, 242 N.J. 449, 472 (2020) (alteration in original) (quoting Globe Motor Co. v. Igdalev, 225 N.J. 469, 480 (2016)). We do not "weigh the evidence and determine the truth of the matter but . . . determine whether there is a genuine issue for trial." Rios v. Meda Pharm., Inc., 247 N.J. 1, 13 (2021) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)). No genuine issue of material fact exists where the record "is so one-sided that one party must prevail as a matter of law." Brill, 142 N.J. at 540 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

"Where there is no material fact in dispute . . . '[an appellate court] must then decide whether the trial court correctly interpreted the law.'" N.J. Realtors v. Twp. of Berkeley, 479 N.J. Super. 379, 391 (App. Div. 2024) (quoting DepoLink Ct. Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super.

325, 333 (App. Div. 2013)) (internal quotation marks omitted). "[T]he evaluation of every motion for summary judgment requires the court, trial or appellate, to review the motion record against not only the elements of the cause of action but also the evidential standard governing that cause of action." Bhagat, 217 N.J. at 40.

"[A] negligence cause of action requires the establishment of four elements: (1) a duty of care, (2) a breach of that duty, (3) actual and proximate causation, and (4) damages." Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 406 (2014) (alteration in original) (quoting Jersey Cent. Power & Light Co. v. Melcar Util. Co., 212 N.J. 576, 594 (2013)). A "plaintiff bears the burden of establishing those elements, 'by some competent proof[.]'" Ibid. (citation omitted) (quoting Overby v. Union Laundry Co., 28 N.J. Super. 100, 104 (App. Div. 1953)).

Ordinarily, "OSHA regulations are pertinent in determining the nature and extent of any duty of care" and "the violation of a legislated standard of conduct may be regarded as evidence of negligence if the plaintiff was a member of the class for whose benefit the standard was established." Alloway, 157 N.J. at 236; see also Fernandes v. DAR Dev. Corp., Inc., 222 N.J. 390, 406 (2015) (same). The declared purpose and policy of OSHA is to address "personal injuries and

illnesses arising out of work situations," 29 U.S.C. § 651(a); and "to assure so far as possible every working man and woman in the Nation safe and healthful working conditions," 29 U.S.C. § 651(b).

In Costa v. Gaccione, we stated:

> "OSHA regulations were not intended to impose direct liability or provide an independent tort remedy." Alloway, 157 N.J. at 235. A finding of an OSHA violation does not "ipso facto constitute a basis for assigning negligence as a matter of law," Kane v. Hart Mountain Indus. Inc., 278 N.J. Super. 129, 144 (App. Div. 1994), aff'd, 143 N.J. 141 (1996); however, OSHA regulations are pertinent in determining the "nature and extent of any duty of care." Alloway, 157 N.J. at 236.
>
> [408 N.J. Super. 362, 369-70 (App. Div. 2009) (citations reformatted).]

"The classic common law approach to premises liability is 'predicated on the status of the person on the property at the time of the injury': invitee, licensee, or trespasser." Rowe v. Mazel Thirty, LLC, 209 N.J. 35, 43 (2012) (quoting Hopkins, 132 N.J. at 433). "The invitee comes by invitation, express or implied, generally for some business purpose of the owner." Ibid.

Generally, there is no duty by a landowner to warn of a known dangerous condition of property of which "the guest is aware . . . or by reasonable use of the facilities would observe it." Tighe v. Peterson, 175 N.J. 240, 241 (2002) (social guest, who was aware of the depth of the water, dove into the shallow

8

end of a pool); see also Vega by Muniz v. Piedilato, 154 N.J. 496, 501 (1998) (trespasser who jumped over an open-air shaft); Mathews v. Univ. Loft Co., 387 N.J. Super. 349, 356 (App. Div. 2006) (in a products liability action, the danger of falling from a loft bed was a risk that was "open and obvious"). The obligation to give a reasonable warning "ordinarily does not exist where the invitee knows of the condition and realizes the risk." Pearlstein v. Leeds, 52 N.J. Super. 450, 459 (App. Div. 1958).

"[B]usiness owners owe to invitees a duty of reasonable or due care to provide a safe environment for doing that which is within the scope of the invitation." Troupe v. Burlington Coat Factory Warehouse Corp., 443 N.J. Super. 596, 601 (App. Div. 2016) (quoting Nisivoccia v. Glass Gardens, Inc., 175 N.J. 559, 563 (2003)). "The duty of due care to a business invitee includes an affirmative duty to inspect the premises and 'requires a business owner to discover and eliminate dangerous conditions, to maintain the premises in safe condition, and to avoid creating conditions that would render the premises unsafe.'" Ibid. (quoting Nisivoccia, 175 N.J. at 563). A commercial "landowner is liable to an invitee for failing to correct or warn of defects that, by the exercise of reasonable care, should have been discovered." Monaco v. Hartz Mountain Corp., 178 N.J. 401, 414-15 (2004).

However, in Pareja, the New Jersey Supreme Court stated "[o]ur precedent makes clear, . . . that absent unusual circumstances, a commercial landowner's duty to remove snow and ice hazards arises not during the storm, but rather within a reasonable time after the storm." Pareja, 246 N.J. at 558. The Court further held "[g]iven the unreasonableness of removing the accumulation of snow and ice while a storm is ongoing, adopting the ongoing storm rule . . . is consistent with our case law on sidewalk liability and snow removal." Ibid. Therefore, the Court held that "under the ongoing storm rule, commercial landowners do not have a duty to remove the accumulation of snow and ice until the conclusion of the storm." Ibid. "[W]here a storm is ongoing, [the Court] h[e]ld that commercial landowners do not have the absolute duty, and the impossible burden, to keep sidewalks on their property free from snow or ice during an ongoing storm." Id. at 557.

The Court established two exceptions to the ongoing storm rule. The first was when a "commercial landowner[']s . . . actions increase the risk to pedestrians and invitees on their property, for example, by creating 'unusual circumstances' where the defendant's conduct 'exacerbate[s] and increase[s] the risk' of injury to the plaintiff." Id. at 559 (second and third alterations in

10

original) (emphasis added) (quoting Terry v. Cent. Auto Radiators, Inc., 732 A.2d 713, 717-18 (R.I. 1999)).

The Court recited the following facts from Terry as an example:

> [T]he defendant, by having removed the vehicle to the rear of its business premises and by having directed the plaintiff to retrieve it from there, had exacerbated and increased the risk of the plaintiff's falling when it required her to walk some one hundred additional feet over snow and ice that had been accumulating on unknown and difficult terrain. She was left with no choice but to do as directed if she wished to retrieve her vehicle.
>
> [Ibid. (quoting Terry, 732 A.2d at 717-18).]

The second exception is "where there was a pre-existing risk on the premises before the storm. For example, if a commercial landowner failed to remove or reduce a pre-existing risk on the property, including the duty to remove snow from a previous storm that has since concluded." Ibid.

Applying this well-established law, we conclude the judge correctly granted defendants summary judgment. The facts are undisputed and the judge correctly applied the ongoing storm rule. Baptista's attempt to distinguish the facts here from Pareja because there was a canopy over the gas pumps is unavailing. Other than the overhead canopy, the gas pumping area was exposed to the ongoing storm. Baptista's claim regarding de-icing fails because a

11

reasonable time after the storm had not expired. Moreover, the Pareja exceptions are unavailing to Baptista because defendants did not direct him where to park or how to get to the minimart. Instead, Baptista chose where he parked the truck and chose to alight from the truck in the gas pump area, rather than drive to and park in the parking spaces designated for customers of the minimart. In addition, there is no evidence in the record of an unsafe or hazardous condition existing on defendants' property prior to the storm.

Further, even assuming the duty to warn is not encompassed within the ongoing storm rule, a decision we need not reach today, Baptista's claim that defendants should have warned him "to be careful with [his] step" is belied by the fact that he drove through the storm and heard ice particles on his windshield prior to arriving at defendants' business. Under these circumstances, there was no duty to warn Baptista "to be careful" because he was aware of the conditions.

Finally, Baptista's reliance on other standards to establish a duty is misplaced. While a business invitee—not "in an employment or work-place context"—may rely on an expert who opines that an OSHA violation creates a duty when the business invitee "was doing the same kind of activity sometimes done by . . . workers in the protected class," see Smith v. Kris-Bal Realty, Inc., 242 N.J. Super. 346, 349, 352 (App. Div. 1990); here, the New Jersey Supreme

Court has held there is no duty during an ongoing storm. A purported OSHA

violation cannot sidestep the Court's holding in <u>Pareja</u>.

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division

A-2420-24